IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MWAMBA M. RUFFIN, #B72799,<br><br>        Plaintiff,<br><br>v.<br><br>HALEY BASNETT and LYNDSEY TROTTER,<br><br>        Defendants. | Case No. 3:19-cv-00896-SMY |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Mwamba Ruffin filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Lawrence Correctional Center. Plaintiff is proceeding on claims against Defendants Lyndsey Trotter and Haley Basnett for deliberate indifference to his mental health needs in violation of the Eighth Amendment (Count 1) and for medical negligence by delaying or denying him access to mental health treatment (Count 2).

This matter is now before the Court on Defendants' Motion for Summary Judgment. (Doc. 67). Plaintiff filed a response in opposition to the motion (Doc. 80) and Defendants filed a reply (Doc. 82).

### Plaintiff's Request for Relief under Federal Rule of Civil Procedure 56(d)

Plaintiff first contends the motion for summary judgment is premature because it was filed before assigned counsel had the opportunity to conduct any discovery. He seeks relief under Federal Rule of Civil Procedure 56(d) and requests that the motion be denied as premature or that he be granted the opportunity for counsel to serve written discovery and obtain relevant witness and party depositions before adjudication of the motion.

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED.R.CIV.P. 56(d). "The mere fact that discovery is incomplete is not enough to prevent summary judgment." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864–65 (7th Cir. 2019). A party seeking relief under Rule 56(d) must make a good faith showing that he cannot respond to the movants' evidence. *Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049, 1058 n. 5 (7th Cir.2000). This must be set forth in an affidavit specifically identifying the material facts the party anticipates discovering. *Grundstat v. Ritt,* 166 F.3d 867, 873 (7th Cir.1999) (finding vague assertions that discovery would develop genuine issues of material fact insufficient to grant continuance).

In this case, the Court entered a Scheduling and Discovery Order on July 17, 2020, which commenced merits discovery. (Doc. 58). After an extension of the scheduling order deadlines, the discovery period closed on June 7, 2021. (Doc. 62). Plaintiff did not seek recruitment of counsel or complain that he was unable to participate in discovery during the discovery period. (*See* Docket entries 58-71). After Defendants filed their motion for summary judgment, Plaintiff requested recruitment of counsel and an extension of time to respond to the motion. (Docs. 71, 72). The Court granted those motions, finding that Plaintiff required counsel to assist him going forward. (Doc. 73). The Court also found that an extension of time for Plaintiff to file his response to the motion for summary judgment was warranted. (*Id.*).

Plaintiff does not contend that he is unable to present facts justifying his opposition to the motion. Instead, he seeks to discover documents that *may* exist that were not the subject of the court-ordered disclosures. According to Defendants, the records produced in the case came from

the Illinois Department of Corrections pursuant to a subpoena that sought all of Plaintiff's medical and mental health records from June 20, 2016 through March 3, 2020. These records were disclosed to Plaintiff's counsel. Plaintiff also wishes to submit written discovery and take depositions of the defendants but does not identify any material facts he anticipates discovering.

Plaintiff has not met his burden under Rule 56(d). The Court will therefore rule on the pending motion.

### Facts[1]

Plaintiff was incarcerated at Lawrence Correctional Center from December 2016 to October 2019. (Doc. 67-1, Deposition of Mwamba Ruffin, p. 7:12-16). Lyndsey Trotter was employed as a mental health professional at Lawrence beginning February 27, 2018. (Doc. 67-2, ¶ 2). Haley Basnett was employed as a mental health professional at Lawrence from August 8, 2016 to June 2020. (Doc. 67-3, ¶ 2). Trotter and Basnett provided clinical screenings and assessments for the treatment needs of offenders referred by medical, counseling, security, or other staff. (Doc. 67-2, ¶ 3; Doc. 67-3, ¶ 3). Additionally, they provided crisis intervention counseling, brief therapy, and group therapy. (*Id.*). There were approximately five mental health professionals providing care at Lawrence during the relevant period. (Doc. 67-2, ¶ 4; Doc. 67-3, ¶ 4). Each mental health professional had an assigned caseload of inmates for behavioral health rounds. (*Id.*).

Plaintiff was evaluated by mental health staff after his transfer to Lawrence in December 2016 and referred for follow-up with mental health professionals. (Doc. 67-4, p. 4). Plaintiff's records reflect that he saw several other mental health professionals before he was assigned to Basnett's caseload. (Doc. 67-4, pp. 12-13, 22-71, 73-93). His last recorded visit with a mental

---

[1] The facts are undisputed unless otherwise noted.

health professional before his first scheduled contact with Basnett was on August 8, 2018. (*Id.*, pp. 92-93). At that time, he was seen by MHP Harris and reported no mental health problems. (*Id.*). The records reflect his first scheduled contact with Basnett was on September 24, 2018 for a mental health group therapy session for anger management. (Doc. 67-3, ¶ 6).

Plaintiff's next contact with Basnett noted in the record was on December 5, 2018. (Doc. 67-3, ¶ 7). He received a disciplinary ticket from Basnett for disobeying a direct order when he entered the mental health office after being instructed that he could not enter and did not leave upon being asked.[2] (Doc. 67-3, ¶ 7; Doc. 67-7, pp. 1-2). Later the same day, he saw MHP Harris for a suicide evaluation. (Doc. 67-4, pp. 96-99). Plaintiff did not see Basnett again after the December 5, 2018 incident. (Doc. 67-1 p. 49:18-20).

Subsequently, Plaintiff had routine follow-up telepsychiatry visits with a psychiatrist but did not have contact with a Lawrence mental health professional until March 8, 2019. (Doc. 67-4, pp. 100-117). At that time, he was seen by MHP Harris, and a plan was developed for Plaintiff to remain on the mental health caseload. (*Id.*, pp. 116-117). During a visit with a Lawrence mental health professional on March 29, 2019, a treatment plan was created and Plaintiff requested to join a mental health depression group. (*Id.*, pp. 118-121).

Plaintiff's records reflect a visit with Trotter on May 7, 2019. (*Id.*, pp. 134-135). The session ended early when Plaintiff informed her that he wanted to see a different mental health professional. (*Id.*). Later that day, Plaintiff saw MHP Harris and reported no mental health concerns. (Doc. 67-4, pp. 136-137). Thereafter, Plaintiff saw other Lawrence mental health professionals until he was transferred in October 2016. (*Id.*, pp. 138-187; Doc. 67-1, p. 56:2-13).

Plaintiff testified that Trotter was only assigned to him as his mental health professional

---

[2] Plaintiff was placed in segregation, but was released following a disciplinary hearing on December 10, 2018. (Doc. 67-1, p. 46:7-10; Doc. 67-7, p. 1).

for a "short period of time" because he complained and did not want to be seen by her.  (Doc. 67-1, p. 39:9-19).  He no longer wanted to be seen by Trotter "[b]ecause she was being very unprofessional. She … wasn't honoring my confidentiality when it comes to my mental health rights and privileges and so forth."  (*Id.*, pp. 39:20-40:1).  He maintains that when he spoke with Trotter for a mental health session, she left the door open which allowed prison staff, who were located outside the room for security, to listen in.  (*Id.*, pp. 39:20-40:13, 42:14-17, 43:17-22, 63:18-64:16).  This occurred approximately five times.  (*Id.*, pp. 40:14-17, 43:23-44:1).  Trotter never refused to see him when requested.  (*Id.*, p. 48:16-21).

Plaintiff testified that Basnett refused to see him approximately five times.  (*Id.*, pp. 48:22–49:20).  He put in requests to see her and made in-person pleas to be seen to no avail.[3] (*Id.*, pp. 44:2-23, 45:14-46:2, 48:22-49:18).  She told him she would put him on the list to see him but weeks would go by without hearing from her.  (*Id.*, p. 44:12-15).  When he saw her in the building, he would ask when she was going to see him.  (*Id.*, p. 44:16-20).  She would make an excuse and tell him "she'd get to me when she gets to me."  (*Id.*, p. 44:21-23).  When he attempted to enter the mental health office to seek care while experiencing a mental health crisis after learning of a death in the family on December 5, 2018, she refused to even let him explain why he was there.  (Doc. 67-1, pp. 45:14-46:6).

Plaintiff was aware of the process to obtain emergency and nonemergency mental health treatment if needed.  (Doc. 67-1, p. 30:7-15; Doc. 67-4, pp. 4, 93).  He knew that if he had a mental health issue, he could put in a request slip for mental health staff to make contact with him.  (*Id.*).  Plaintiff walked by the request slip box multiple times per day and could have submitted a request slip for mental health care during any trip past the box.  (*Id.*, p. 31:6–32:19).  Even during

---

[3] In her declaration, Basnett denied refusing to see Plaintiff for mental health issues.  (Doc. 67-3, p. 2).

lockdowns, Plaintiff was able to submit request slips for mental health care at Lawrence. (*Id.*, pp. 32:20–33:8). According to Plaintiff, he submitted such requests, but the requests were not honored. (Doc. 80, p. 18).

Plaintiff did not suffer any physical injury due to a lack of mental health care, and he never harmed himself due to a lack of mental health care. (Doc. 67-1, p. 50:2-10). He never got into any altercations due to a lack of mental health care. (*Id.*, p. 50:11-14). He suffered from difficulty sleeping, eating too little or too much, weight gain, and increased blood pressure. (*Id.*, pp. 50:15–51:18, 52:16-22).

## DISCUSSION

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a)). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, the Court may not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). And it must view the evidence "in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences, and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

### Count 1 – Eighth Amendment claim

Section 1983 provides a private right of action against persons acting under color of state

law who violate constitutional rights. 42 U.S.C. § 1983. Prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To prevail on an Eighth Amendment claim of constitutionally-deficient medical care, a prisoner must satisfy a two-part test. *Id.* He must establish that he had an objectively serious medical need. *Id.* The second, subjective prong requires a prisoner to show that the defendant had knowledge of facts from which he or she could infer that a substantial risk of serious harm exists and then disregards that risk. *Id.* at 476.

Defendants do not dispute that Plaintiff suffered from an objectively serious medical condition. The question is whether there is evidence in the record from which a rational jury could find that Defendants were deliberately indifferent to Plaintiff's mental health needs. An inmate is not required to show that he was literally ignored by prison staff to demonstrate deliberate indifference. *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000). If a risk from a course of medical treatment, or lack thereof, is obvious, a factfinder can infer that a defendant knew about it and disregarded it. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). The Seventh Circuit has "identified several circumstances that can be enough to show deliberate indifference" including that the defendant ignored a request for treatment, substantially departed from accepted professional standards, persisted in an ineffective course of treatment, or inexplicably delayed treatment. *Id.* at 729.

Plaintiff testified in his deposition that Trotter never refused his requests for mental health care.[4] The basis of his claim against her is that she allowed prison staff to overhear their sessions

---

[4] There is a factual dispute as to how many times Plaintiff saw Trotter but that does not affect the outcome of the pending motion.

and that it was unprofessional for her to not honor his right to confidentiality. Those actions however do not constitute a violation of the Eighth Amendment. While it appears there may have been a violation of the Health Insurance Portability and Accountability Act ("HIPAA"), that is not an enforceable right for purposes of a lawsuit under § 1983. *See Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019). Because Plaintiff has not offered any evidence from which a jury could find Trotter was deliberately indifferent to his mental health needs, she is entitled to summary judgment.

On the other hand, Plaintiff testified that Basnett ignored at least five requests for mental health treatment. This appears to be supported by records showing the only contact he had with a mental health professional after August 8, 2018 until December 5, 2018[5] was an anger management group therapy session on August 27, 2018, and a mental health group therapy session on September 24, 2018 that Basnett conducted. Additionally, when Plaintiff sought mental health treatment while in crisis on December 5, 2018, Basnett refused his request. According to Plaintiff, she would not let him explain why he was in crisis and needed mental health treatment; instead, Basnett told him to leave the mental health office and subsequently gave him a disciplinary ticket. He was then seen by another MHP for a suicide evaluation. This evidence presents a material issue of fact for determination by a jury. As such, Basnett is not entitled to summary judgment.

The final issue with regard to Count 1 is whether Basnett is entitled to summary judgment on Plaintiff's claim for compensatory damages. Section 1997e(e) of the PLRA provides that "[n]o Federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of

---

[5] This appears to be the time Plaintiff was assigned to Basnett's caseload based on the records and Plaintiff's testimony.

physical injury." According to Plaintiff, he suffered difficulty sleeping, eating too little or too much, weight gain, and high blood pressure. However, there is no evidence in the record that these symptoms and difficulties were caused by the denial of mental health care by Basnett.[6] As a result, the PLRA bars Plaintiff's claim for compensatory damages for emotional injury. *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003). The statute does not bar a claim for nominal or punitive damages for the Eighth Amendment violation itself. *Id.* at 941.

### Count 2 – Medical Negligence

Illinois law requires a plaintiff pursuing a claim of medical negligence to file an affidavit stating that "there is a reasonable and meritorious cause" for litigation of the claim, along with a physician's report in support of the affidavit. 735 ILCS § 5/2-622. This requirement applies to malpractice litigation in federal court because § 5/2-622 is a substantive condition of liability. *Hahn v. Walsh*, 762 F.3d 617 (7th Cir. 2014). Plaintiff had until the summary judgment phase to produce the affidavit. *Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019). Because he failed to do so, Defendants are entitled to summary judgment on Count 2.[7]

### DISPOSITION

For the reasons stated, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to the Eighth Amendment claim in Count 1 against Defendant Lyndsey Trotter, the claim for compensatory damages in Count 1, and the state law medical negligence claim in Count 2. The Clerk of Court is **DIRECTED** to terminate Trotter as a defendant and enter judgment accordingly at the close of the case.

---

[6] Because Plaintiff has not linked any of these issues to the denial of mental health care, it is not necessary for the Court to determine whether any of these issues qualify as a physical injury.

[7] In his response to the motion for summary judgment, Plaintiff requests leave to obtain an affidavit. (Doc. 80, p. 31). The Court pointed out this requirement in the Merit Review Order. (Doc. 10, p. 3). Plaintiff did not raise any issue regarding his ability to obtain an affidavit before his response to the motion for summary judgment was due. As previously stated, the Court does not find the reopening of discovery is warranted.

The motion is **DENIED** as to the claim in Count 1 against Defendant Haley Basnett, which will proceed to trial. This matter will be scheduled for a status conference in a separate Order to set the final pretrial conference and trial dates.

**IT IS SO ORDERED.**

**DATED:** October 19, 2022

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**
